**Fed. R. Civ. P. 60(a), made applicable by Fed. R. Bankr. P. 9024, permits the court to correct a clerical mistake in an order. This amended ruling corrects a typographical error found on page 16, line 2 of the original ruling (docket no. 220) by changing "was" to "as." No other changes were made to the ruling.**

**SO ORDERED.**
**DONE and SIGNED June 14, 2021.**



_____
**JOHN S. HODGE**
**UNITED STATES BANKRUPTCY JUDGE**

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | | |
|---|---|---|
| IN RE: | § § | Case Number: 90-13449 |
| Patrick L. McConathy | § | Chapter 7 |
| Patricia Chapman McConathy | § | |
| Debtors | § § § | |

## Amended Memorandum Ruling

This case involves chapter 7 debtors who filed bankruptcy more than 30 years ago but failed to disclose certain mineral rights in their bankruptcy schedules. Nearly three decades later, one of the debtors, Patrick L. McConathy, filed suit in Kansas state court alleging that he acquired the mineral rights before his bankruptcy case commenced, and that he has maintained continuous ownership since then. In the lawsuit, Debtor and other parties claiming to hold an interest in the mineral rights seek $15 million from the defendants under various legal theories.

After the Kansas litigation commenced, this court reopened the bankruptcy case to permit the trustee to administer the undisclosed mineral rights. The law is clear that any property owned by a debtor as of the commencement of the case but not scheduled, remains property of the estate pursuant to 11 U.S.C. § 554. Thus, the unscheduled mineral rights remain property of the estate and are subject to the trustee's exclusive administration.

In its order reopening this case, this court declared that all actions involving estate property are automatically stayed. This court's order notwithstanding, Debtor and his counsel continued to prosecute the state court lawsuit. As a result, the trustee filed a motion to enforce the stay, which led this court to enter an Agreed Order staying the entire state court litigation.

The matter before the court is a motion to modify the automatic stay. Certain non-debtor parties in the state court litigation are seeking modification of the stay in order to proceed with that litigation. For reasons that follow, the motion is denied. The automatic stay remains undisturbed.

**Background**

Pursuant to Fed. R. Bankr. P. 7052, made applicable to this contested matter by virtue of Fed. R. Bankr. P. 9014, the court makes the following findings:

1. On December 31, 1990, Patrick L. McConathy ("**McConathy**") and Patricia Chapman McConathy (collectively, "**Debtors**") commenced this case under chapter 7 of the Bankruptcy Code. Thereafter, Debtors received a discharge. A final decree closing this case was entered on October 25, 1994.

2. On April 15, 1996, Debtors reopened their case to disclose overriding royalty interests in Texas which were not listed in their bankruptcy schedules. The court issued a second final decree closing this case on January 7, 1997.

3. On July 3, 2006, this case was reopened yet again when Brammer Engineering, Inc. filed a motion to reopen. This court issued a third final decree closing this case on October 9, 2006.

4. On August 13, 2019, McConathy and McConathy Oil and Gas Co., a Louisiana Partnership (the "**Partnership**"), among others, filed suit in the 25th Judicial District Court in Kearny County, Kansas, Case No. 19-cv-0011, asserting that, since 1987, McConathy has owned undivided working interests and leasehold rights in over 4,000 acres located in Kearny County, Kansas (the "**Kansas Mineral Rights**"). Further, McConathy asserted that he acquired 100% of the interests in the Kansas Mineral Rights upon the dissolution of the Partnership from the other partners when he assumed the debts of the Partnership in exchange for an assignment of their interests to him in the Kansas Mineral Rights.[1]

5. The Kansas lawsuit was joined by other plaintiffs. Each plaintiff claims to be an owner of undivided working interests in various oil and gas leases, including the same leases in which McConathy claims to own a fractional interest.

6. The petition in the Kansas lawsuit identifies other "interested parties" who

---

[1] In Louisiana, a partnership ceases to exist if it has only one partner. La. Civ. Code art. 2826.

may also assert an interest in the same mineral leases at issue.

7. The Kansas lawsuit seeks, *inter alia*, a determination of ownership of the working interests and other interests related to oil and gas leases described in the petition.

8. The Kansas lawsuit alleges that various oil and gas leases described in the petition were the same leases covering the same lands at issue in an earlier partition lawsuit. Plaintiffs claim that the order of partition does not affect their interests because they were not served with the partition lawsuit and had no notice of it.

9. In their state court petition, plaintiffs assert claims for conversion (the oil produced and sold belongs to plaintiffs), unjust enrichment (proceeds for oil produced and sold belong to plaintiffs as do the leasehold rights), trespass (drilling of the wells constitutes a violation of plaintiffs' property rights), ejectment (turn over operation of the wells to someone else) and general title / declaratory judgment (declaring plaintiffs as the owners of the Kansas Mineral Lease Rights). Second Amended Petition, ¶¶ 17, 54-61, 68-91, docket no. 182-4, pp. 41-64.

10. The Kansas lawsuit seeks $15 million in damages from the defendants. Docket no. 182-6.

11. At some point, third-party defendants were added. In turn, one or more of the third-party defendants claim to own a net-profits interest ("**NPI**") by virtue of an unrecorded (and, perhaps, unexecuted) instrument which, if effective,

would burden the estate's working interests.

12. On January 20, 2021, this court reopened this bankruptcy case for a third time on the grounds that Debtors did not properly disclose McConathy's claimed interest in the Kansas Mineral Rights, the existence of a Partnership, or certain pre-petition transfers.

13. In the order reopening this case, this court stated: "[p]ursuant to 11 U.S.C. § 362, the automatic stay is hereby in effect and all actions involving property of the bankruptcy estate are hereby stayed."

14. On January 22, 2021, the defendants in the Kansas litigation filed a Suggestion of Bankruptcy into the record of that case which admonished the parties to "take notice of the attached Order from the [Bankruptcy Court]." More importantly, it stated that the parties should immediately halt any proceedings involving property of the bankruptcy estate, further providing that the automatic stay is in effect.

15. Despite the filing of the Suggestion of Bankruptcy, McConathy and his counsel (who also serves as counsel to other parties) continued to prosecute the Kansas litigation in violation of the automatic stay.

16. Thereafter, the trustee filed a motion in this court to enforce the stay (docket no. 196).

17. This court entered an Agreed Order (docket no. 201) staying the entire state court litigation.

18. A motion to modify the stay was filed by the non-debtor co-plaintiffs and the

third-party defendants in the Kansas litigation: Foundation Energy Fund IV-A, LP, a Delaware Limited Partnership; Foundation Energy Fund IV-B Holding, LLC, a Texas Limited Liability Company; Dolores Jo Matson Trust; Roger Melvin Matson Trust; Willis J. Magathan; Entech Enterprises, Inc.; and Black Stone Minerals Company, LP.

19. The motion to modify the stay seeks the entry of an order permitting the moving parties to go forward with their claims in the Kansas lawsuit.
20. The trustee and the defendants in the Kansas litigation oppose the motion.
21. The court held an evidentiary hearing on the motion. All parties submitted evidence.

**Conclusions of Law and Analysis**

A. **Jurisdiction, venue and core status.**

This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and by virtue of the reference by the district court pursuant to 28 U.S.C. § 157(a) and LR 83.4.1. Venue is proper in this district. 28 U.S.C. §§ 1408 and 1409(a). This matter constitutes a "core" proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (G), and (O).

B. **Debtor's interest in the mineral rights constitutes property of the bankruptcy estate.**

As a threshold issue, the court must decide if McConathy's mineral rights constitute property of the estate. If they do, the automatic stay applies. If not, the stay will not apply.

This is an easy issue to put to rest. 11 U.S.C. § 541(a)(1) defines property of

the bankruptcy estate to include: "all legal or equitable interests of the debtor in property as of the commencement of the case." The Fifth Circuit has broadly construed the scope of section 541(a)(1) and has described it as "all encompassing." *In re S.I. Acquisitions, Inc.*, 817 F.2d 1142, 1149 (5th Cir. 1987) (" 'all legal and equitable interests of the debtor in property' is all-encompassing . . ."); *see also Burgess v. Sikes (In re Burgess)*, 392 F.3d 782, 785 (5th Cir. 2004) (scope of property of the estate includes intangible property and causes of action).

In the Kansas litigation, McConathy alleges that he has individually owned 100% of the Partnership's interest in the Kansas Mineral Rights continuously since 1987, which is prior to the commencement of his bankruptcy case. Therefore, he had a statutory duty to disclose his interest in the Partnership, or to list the mineral rights as part of his personal assets. 11 U.S.C. § 521.

After a careful review of the bankruptcy record, the court has determined that Debtors failed to comply with their statutory duty to disclose McConathy's ownership of the Kansas Mineral Rights or the Partnership. As a result, this property remains property of the bankruptcy estate. As the Fifth Circuit has noted, "[i]n a Chapter 7 case, at the close of the bankruptcy case, property of the estate that is not abandoned under § 554 and that is not administered in the bankruptcy proceedings—including property that was never scheduled—remains the property of the estate." *Kane v. Nat'l Union Fire Ins. Co.*, 535 F.3d 380, 385 (5th Cir. 2008).

C. **The automatic stay applies to the Kansas litigation because it involves property of the estate.**

Having established that there is property of the estate at issue, the next

question is whether the automatic stay applies to the Kansas litigation.[2]

Section 362(a)(3) of the Bankruptcy Code provides that the filing of a bankruptcy petition "operates as a stay" of "any act ... to exercise control over property of the [bankruptcy] estate." 11 U.S.C. § 362(a)(3). When the property at issue is a claim or cause of action, the phrase "exercise control over" includes adjudication of the claim.

With respect to claims owned by the estate, the automatic stay clearly applies. The estate's representative is the sole person with authority to adjudicate the estate's causes of action. In a chapter 7 case, the trustee is the estate's sole representative. 11 U.S.C. § 323(a). *Kane,* 535 F.3d at 385 ("Thus, a trustee, as the representative of the bankruptcy estate, is the real party in interest, and is the only party with standing to prosecute causes of action belonging to the estate once the bankruptcy petition has been filed."). When someone other than the estate's sole representative files a suit to adjudicate the rights of parties with respect to an asset of the estate (as happened in this case when McConathy filed the Kansas lawsuit claiming that he owned the mineral rights), such action violates the automatic stay provisions of section 362(a)(3). See, *In re Tamarack Development Associates, LLC*, 611 B.R. 286 (Bankr. W.D. Mich. 2020) (filing and pursuit of causes of action belonging to the estate by an entity other than the trustee has the potential to

---

[2] Even if there is doubt about whether the mineral rights constitute property of the bankruptcy estate, "the Automatic Stay extends to property that is even arguably property of the estate, though a final determination on whether or not such property is or is not property of the estate has yet to be finally adjudicated." *Ward v. Cross Keys Bank*, No. 3:20-CV-01467, 2021 WL 1724868, at *8 (W.D. La. Apr. 29, 2021) (citation omitted).

adversely affect the estate and constitutes an improper exercise of control over property of the estate in violation of section 362(a)(3)); *In re Garak*, 569 B.R. 684 (Bankr. E.D. Mich. 2017) (chapter 7 debtors' continuing prosecution of counterclaims that they asserted against credit union, which were property of the bankruptcy estate, violates section 362(a)(3)).

With respect to the claims asserted by the non-debtor parties, the automatic stay also applies because a resolution of those claims may have an adverse impact on the estate's claims. In this case, the non-debtor parties have asked the Kansas court to determine their fractional working interests in leases in which the estate also holds an interest. It stands to reason that a determination of one party's fractional interest impacts the determination of all other parties' fractional interest in the same lease. Accordingly, a ruling by the Kansas state court concerning one party's fractional interest would interfere with the estate's property interests.

It is widely recognized that actions involving non-debtors that would have an "adverse impact" upon the property of the estate are subject to the automatic stay under § 362(a)(3). *See, e.g., In re Nat. Century Fin. Enterprises, Inc.*, 423 F.3d 567, 578 (6th Cir. 2005) ("[A]n action taken against a nondebtor which would inevitably have an adverse impact upon the property of the estate must be barred by the [§ 362(a)(3)] automatic stay provision.") (quoting *Licensing by Paolo, Inc. v. Sinatra (In re Gucci),* 126 F.3d 380, 392 (2nd Cir.1997)); *In re Klarchek*, 508 B.R. 386, 397 (Bankr. N.D. Ill. 2014) ("given the potential adverse impact on property of the estate of the action, the action must be stayed pursuant to section 362(a)(3).")*; see*

also *Kagan v. Saint Vincents Catholic Med. Ctrs. of New York* (*In re Saint Vincents Catholic Med. Ctrs. of New York* ), 449 B.R. 209, 217–18 (S.D.N.Y.2011) ("the automatic stay provision is not limited solely to actions against the debtor, but rather bars actions against even against third-parties that would have an adverse impact on the property of the estate"); *In re Howrey LLP,* 492 B.R. 19, 23 (Bankr.N.D.Cal.2013) (finding a violation of § 362(a)(3) for a party to seek a finding in another court that may implicate the estate's cause of actions).

In this case, every count in the Kansas petition would require the state court to adjudicate whether the non-debtor parties have a rightful claim to the mineral rights at issue. But in making that determination, the Kansas court would also decide whether the estate has a rightful claim to the mineral rights because a determination of one party's fractional interest necessarily affects the remaining parties claiming to hold the remaining fractional interests.

If the state court adjudicated the non-estate claims, it would threaten the integrity of the administration of the bankruptcy estate. Section 362(a)(3)'s prohibition of acts to exercise control over property of the estate applies in this instance to prevent the adjudication of the claims asserted by the non-debtor parties that are hopelessly intertwined with the claims of the estate.

### D. **The moving parties failed to make a showing of "cause" under 11 U.S.C. § 362(d)(1).**

Having decided that the automatic stay applies to all claims asserted in the Kansas litigation, the next issue is whether the moving parties are entitled to an order from this court modifying the stay. 11 U.S.C. § 362(d)(1) requires courts to

grant relief from the automatic stay where there exists "cause" to do so. The statute provides:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
>
> > (1) for cause, including the lack of adequate protection of an interest in property of such party in interest.

11 U.S.C. § 362(d)(1).

For the moving parties to obtain relief, they must meet the statutory standard of "for cause." The Fifth Circuit has noted that the Bankruptcy Code does not precisely define what "for cause" means and that this lack of clarity provides "flexibility to the bankruptcy courts." *See In re Mirant Corp.*, 440 F.3d 238, 254 (5th Cir. 2006). As such, whether "cause" exists is a fact-intensive inquiry that must be determined on a case-by-case basis. *In re Reitnauer*, 152 F.3d 341, 343 n.4 (5th Cir. 1998) ("Because § 362 does not offer guidance as to what constitutes 'cause,' reviewing courts must determine whether cause existed on a case-by-case basis."). The inquiry to determine cause requires that "[e]ach case must be viewed on the basis of its particular facts, and there must be a balancing of interest[s]." *In re Bovino*, 496 B.R. 492, 502 (Bankr. N.D. Ill. 2013).

A party moving to lift the stay under § 362(d)(1) must initially produce evidence establishing "cause" for the relief sought. Once the moving party establishes a *prima facie* case for "cause," the burden shifts to the party opposed to the relief to disprove its existence. *In re Omni Lion's Run, L.P.*, 578 B.R. 394, 397–

98 (Bankr. W.D. Tex. 2017). If the moving party fails to make an initial showing of "cause," however, the court should deny the relief without requiring any showing from the party opposed to the relief. *In re Keene Corp.*, 171 B.R. 180, 182 (Bankr. S.D.N.Y. 1994). If, however, the moving party establishes a *prima facie* case, which is required in all stay litigation, then the moving party only bears the burden of proof with respect to the debtor's equity in the property; the party opposed to the relief has the burden on all other issues. 11 U.S.C. § 362(g). *In re Syndicom Corp.*, 268 B.R. 26, 43 (S.D.N.Y. 2001) ("section 362(d)(1) requires an initial showing of cause by the movant; then, with the exception of the debtor's equity in the property (which is not at issue on a motion under section 362(d)(1), like this one), section 362(g) places the burden of proof on the debtor for all other issues.").

Using these standards, the starting point for the court's analysis is to review the motion to determine if the moving parties made the required *prima facie* case. Here, the motion recited three "facts" to justify the modification of the stay:

(1) the modification of the stay will permit the moving parties to proceed with their legal claims in the Kansas lawsuit;

(2) the modification of the stay will not interfere with the administration of the bankruptcy case or interfere with the trustee's rights to bring or continue any legal action; and

(3) the modification of the stay will "effect no prejudice to the Trustee nor to the bankruptcy estate while terminating the continuing harm to the Movants caused by their inability to proceed with their legal actions against the Defendants in the Lawsuit."

These so-called "facts" are nothing more than conclusory statements that are not supported by any evidence. The first statement (lifting the stay will permit the

lawsuit to proceed) puts the proverbial cart before the horse because it is what the moving parties are asking this court to do. It is not a fact to justify a finding of "cause." The second statement (lifting the stay will not interfere with the administration of the bankruptcy case or the rights of the trustee) bears no relationship to why "cause" exists to lift the automatic stay. Rather, it is a statement assuming that if the stay is lifted, the Kansas litigation will not interfere with the administration of the case or the trustee's right to bring his own lawsuits against responsible parties. This is not a reason to lift the stay.

The third statement comes closest to meeting the standard. In the third statement, the moving parties argue there is "cause" to lift the stay because lifting the stay will not prejudice the trustee, but it will stop the "harm" they are enduring by virtue of being stayed from prosecuting their claims in the Kansas litigation. It is conclusory, however, to suggest that the trustee will not be prejudiced by lifting the stay.

This court simply disagrees with the moving parties' contention that the estate will not suffer any prejudice if the stay is lifted. The whole point of the Kansas litigation is to adjudicate the validity and extent of competing interests in mineral rights co-owned by the estate and other parties, and then to determine the validity of claims against the defendants. Until the estate's interest is determined, any determination of ownership of any other fractional interest necessarily runs the risk of interfering with the estate's recognition of its rights and the administration of that property by this court.

The moving parties failed to make the required *prima facie* showing of "cause" to lift the automatic stay. Making various conclusory allegations, which in the view of the moving parties entitled them to their preferred relief, is not sufficient. As such, a denial of the motion is warranted. *In re Trust*, 526 B.R. 668, 684 (Bankr. N.D. Tex 2015) (a moving party's failure to make an initial showing of "cause" to lift the automatic stay "warrants denial of the motion."). The motion is therefore denied.

For the sake of completeness, if the court assumes that the moving parties satisfied their initial burden, the court nevertheless finds that the parties opposed to the motion disproved the existence of "cause" to lift the automatic stay. The court reached this determination after it engaged in a fact-intensive inquiry to determine whether cause exists. The court held an evidentiary hearing, reviewed the documentary evidence submitted by the parties, and considered the arguments of counsel. After careful review of the evidence and the record of the bankruptcy case, and after balancing the interests of all the parties, the court finds that "cause" does not exist to lift the stay.

In determining whether "cause" exists to lift the automatic stay under § 362(d)(1) to permit litigation to proceed in another forum, some bankruptcy courts within the Fifth Circuit look to twelve factors:

> (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6)

> whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms.

*Trust*, 526 B.R. at 674, citing *Sonnax Indus., Inc. v. Tri Component Products Corp. (In re Sonnax Indus., Inc.),* 907 F.2d 1280, 1286 (2d Cir.1990).

A court should only apply the factors that are relevant to the case and does not need to give each factor equal weight. *Id.* In this case, most of the *Sonnax* factors are not relevant. Three factors, however, weigh heavily against lifting the stay.

Factor 7 (whether litigation in another forum would prejudice the interests of other creditors) weighs against lifting the stay due to the prejudice that may result to the estate and its creditors if the Kansas court makes a determination detrimental to the estate concerning the fractional ownership of the mineral rights claimed by the non-debtor parties.

Factor 10 (the interests of judicial economy and the expeditious and economical resolution of litigation) also weighs against lifting the stay because if the stay is lifted there will be two courts – this court and the Kansas court – that will decide virtually identical issues. This is because it has been suggested by the trustee's counsel that he intends to file an adversary proceeding in this court to determine the estate's claims which will assert essentially the same claims at issue

in the Kansas litigation. Moreover, because the Kansas lawsuit was filed by McConathy in violation of the automatic stay, there is a legitimate question as to whether that lawsuit is void *ab initio*.

Factor 12 (impact of the stay on the parties and the balance of harms), leans heavily against lifting the stay. The potential harm to the estate far outweighs the harm to the non-debtor parties, particularly considering the risk of inconsistent decisions regarding the fractional interest of the mineral rights involved.

As an additional reason to deny the modification of the stay, the court notes that one of the matters being contested in the Kansas litigation concerns the enforceability of a NPI which was supposedly granted in an unrecorded (and, perhaps, unexecuted) instrument. If it turns out that the unrecorded NPI is valid and enforceable, it will burden the estate's interest in the mineral leases. To determine the enforceability of the NPI, the trustee has informed this court that he may rely upon his avoiding powers under 11 U.S.C. § 544(a)(3) to avoid the unrecorded transfer. If the NPI is avoided, it would have a significant impact on the value of the estate's interest in the mineral rights. As such, it makes sense to litigate issues regarding the enforceability of the NPI in this court. For this additional reason, the request to modify the stay is denied.

E. **This court has exclusive jurisdiction to determine what is property of the estate.**

Under 28 U.S.C. § 1334(e) and by reference to 28 U.S.C. § 157(a), a bankruptcy court has exclusive jurisdiction to determine whether specific property constitutes property of the bankruptcy estate. *In re Cox*, 433 B.R. 911, 920 (Bankr.

N.D. Ga. 2010) ("[w]henever there is a dispute regarding whether property is property of the bankruptcy estate, exclusive jurisdiction is in the bankruptcy court.") (citations omitted). Thus, if there is a dispute about whether the bankruptcy estate holds a legal or equitable interest in mineral rights, this court has exclusive jurisdiction to resolve that dispute.

The nature of the Kansas lawsuit is a determination of who owns what. If the state court determines the fractional ownership interest held by the non-debtor parties, it will effectively determine the interests held by the bankruptcy estate. The Kansas litigation necessarily requires the state court to determine the interests in the mineral rights held by all parties to that litigation. That determination, however, is squarely within this court's exclusive jurisdiction. To determine the extent of the estate's interest and to avoid the risk of inconsistent adjudications in parallel proceedings, it is necessary for this court to exercise its exclusive jurisdiction. *In re Duval Cty. Ranch Co.*, 167 B.R. 848, 850 (Bankr. S.D. Tex. 1994) (remand of state court litigation "would subject the parties, this Court and the bankruptcy estate to the risk of inconsistent decisions.").

Thus, for this reason as well, the motion is denied.

### Conclusion

To protect and preserve property of the estate, the motion to modify the automatic stay is **DENIED**.

The court will enter a separate order in accordance with this ruling.

### ###