**SO ORDERED.**

**DONE and SIGNED May 20, 2022.**



_____
**JOHN S. HODGE**
**UNITED STATES BANKRUPTCY JUDGE**

---

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | | |
|---|---|---|
| IN RE: | § | Case Number: 90-13449 |
| | § | |
| Patrick L. McConathy | § | Chapter 7 |
| Patricia Chapman McConathy | § | |
|   Debtors | § | |
| | § | |

## <u>Memorandum of Decision</u>

Patrick L. McConathy[1] filed bankruptcy over 30 years ago but failed to

disclose valuable mineral rights that he owned in Kansas. Decades after his

bankruptcy case was closed, he filed suit in Kansas asserting claims related to the

undisclosed property. The lawsuit seeks millions of dollars in damages from oil

companies which drilled and produced oil on lands encumbered by the mineral

rights. As a matter of law, the undisclosed assets remain as property of the

bankruptcy estate even though the bankruptcy case was closed decades ago.

---

[1] Patrick L. McConathy is referred to as "**<u>Debtor</u>**", or with his wife, Patricia Chapman McConathy, "**<u>Debtors</u>**."

Debtor's lawyers were clearly aware of the need to determine whether the mineral rights had been listed in the bankruptcy schedules. Instead of making that determination, they just hauled off and filed a lawsuit seeking relief for claims that belong exclusively to the estate. To make matters worse, after the lawsuit was filed, they concealed critical facts about the bankruptcy case from the defendants and misled the state court about the need to obtain consent of the trustee.

This court is generally reluctant to impose sanctions against attorneys or their clients, but clear and convincing evidence in this case showed that Debtor's counsel acted in bad faith and willfully abused the judicial process by violating the automatic stay. Sanctions are appropriate.

Before the court are two motions. First, the state court defendants seek an order: (a) declaring that the Kansas lawsuit is invalid because it violated the stay, and (b) awarding $315,000 for civil contempt sanctions to compensate them for the costs incurred in defending the suit. Second, certain non-debtor parties in the Kansas litigation filed a motion to annul the stay.

For reasons that follow, the court concludes that: 1) the claims asserted by Debtor in the Kansas lawsuit are voidable and are therefore invalid and without effect, 2) the motion for contempt should be granted in part, and 3) the motion to annul the stay should be denied. Monetary sanctions against Debtor's counsel will be awarded after the court determines the reasonableness of attorneys' fees.

## Background

Pursuant to Fed. R. Bankr. P. 7052, made applicable to contested matters by

virtue of Fed. R. Bankr. P. 9014, the court makes the following findings:

1. On December 31, 1990, Patrick L. McConathy and Patricia Chapman McConathy commenced this case under chapter 7 of the Bankruptcy Code. Thereafter, they received a discharge. A final decree closing this case was entered on October 25, 1994.

2. On April 15, 1996, Debtors reopened their case to disclose overriding royalty interests in Texas that were not listed in their bankruptcy schedules. The court issued a second final decree closing this case on January 7, 1997.

3. On July 3, 2006, this case was reopened yet again when Brammer Engineering, Inc. filed a motion to reopen to correct a prior conveyance of certain properties. A third final decree was entered on October 9, 2006.

4. Debtors did not disclose in their bankruptcy schedules that they owned undivided working interests and leasehold rights covering over 3,000 acres in various tracts in Kearny County, Kansas (the "**mineral rights**").

5. Long after the bankruptcy case was closed for the third time, American Warrior, Inc., Heartland Oil, Inc. and Mid-Continent Resources, Inc. (collectively "**AWI**") filed a partition action in state court in Kearny County, Kansas, case no. 15-CV-08 (the "**Partition Lawsuit**") against various owners of working interests in mineral leases covering lands located in that county. One of the defendants in the Partition Lawsuit was McConathy Production Company, Inc. In the Partition Lawsuit, AWI obtained a default judgment which resulted in it obtaining 100% ownership of the leases at issue.

Thereafter, the default judgment was entered, and AWI drilled and produced oil from those leases, collecting more than $7 million from the production.

6. Later, some of the defendants in the Partition Lawsuit retained Kansas lawyers Jeffery L. Carmichael ("**Carmichael**") and Jonathan Schlatter ("**Schlatter**") to determine if they could challenge the default judgment on the basis that they did not receive proper notice of the lawsuit. They also wanted to assert a claim for damages for the value of the minerals extracted from the properties after the default judgment was entered.

7. To investigate the claims, Carmichael and Schlatter reviewed the chain of title for various leases and then compared that information to the list of named parties in the Partition Lawsuit to see if there were any inconsistences or issues that needed to be addressed. Carmichael and Schlatter became aware that title to a portion of a relevant leasehold interest was held in the name of McConathy Oil & Gas Company, a Louisiana Partnership (the "**Partnership**"), rather than "McConathy Production Company, Inc." which was the entity named in the Partition Lawsuit.

8. As part of his investigation, Carmichael was able to locate Debtor. Carmichael spoke with Debtor by telephone in May of 2019 to inquire about McConathy Oil & Gas Company and McConathy Production Company, Inc.

9. Thereafter, Carmichael and Debtor had multiple telephone calls. During one of these calls, Debtor explained that he is the sole partner of the Partnership, having acquired all remaining interests from his former partners.

10. At some point, Debtor and Carmichael discussed the possibility of Debtor hiring Carmichael to establish that Debtor or the Partnership owned mineral rights that were improperly partitioned by AWI in 2018.

11. During his first conversation with Carmichael, Debtor disclosed that he had filed for bankruptcy in 1990. Importantly, Debtor told Carmichael that he did not know whether he owned any mineral rights in Kansas, but if he did, he would have owned them prior to his bankruptcy case. Debtor understood that the mineral rights, together with any claims or causes of action which resulted from them, were conceivably property of his bankruptcy estate.

12. After Debtor made this important disclosure to Carmichael, they negotiated a contingency fee arrangement. As part of the negotiations, Debtor asked for a lower percentage fee because he wanted the creditors of his bankruptcy estate to recover as much as possible. Carmichael and Schlatter, on the other hand, wanted a higher percentage because of the extra work required of them to handle the bankruptcy "wrinkle" (Schlatter's term). The parties eventually reached an agreement after the following sequence of events:

    a. On May 23, 2019, Schlatter and Carmichael sent an email (docket no. 312-1) to Debtor regarding an engagement letter which proposed a contingency fee arrangement of 40% of any amount recovered, increasing to 50% if an appeal is filed. The email stated:

       Pat,

       Great talking to you again yesterday. Attached are a proposed engagement letter and contingent fee

agreement.

As we discussed on the phone yesterday, McConathy Oil & Gas Co. appears to have owned substantial working interests of record in Kearny County, Kansas, that were improperly partitioned by American Warrior. American Warrior thereafter proceeded to drill several producing wells on some of this leasehold, the revenues from which your company should be entitled. Once the paperwork is returned to your office, we will begin pursing this claim on behalf of you and McConathy Oil & Gas Co.

Jon Schlatter

b. On May 26, 2019, Debtor replied to the email by stating:

Gentlemen,

I have read the attached docs and my only real comment is that 30% seems fair versus the %s in the agreements. If all this was something that would only benefit me, I would have no problem with the higher %. However, since it could benefit my old creditors, I would need to get the maximum benefit to them.

Thanks
Patrick McConathy

c. On May 29, 2019, Schlatter and Carmichael sent an email to Debtor which stated:

Pat,

We can meet you half way on that request, and change the fee to 35%. We can also lower the percentage on appeal from 50% to 40%. We'll be advancing the expenses of the case, and have the added wrinkle of dealing with the bankruptcy court which will increase our costs. These are items we have to account to our partners for. If that sounds good, I'll paper it up and send it to you.

Jon

d. On May 29, 2019, Debtor replied to that email: "Sounds good. Thanks for your flexibility." Thereafter, Debtor executed the engagement letter and contingency fee agreement on or about May 29, 2019.

13. The contingency fee agreement contained an express reference to Debtor's bankruptcy case and an acknowledgment of the need to obtain consent and authorization from the bankruptcy trustee to pursue the claims:

> "Clients hereby also authorize Attorneys to obtain the consent and authorization of the bankruptcy trustee, Case No. 90-13449, Western District of Louisiana, to pursue said claims on behalf of Pat McConathy. Clients understand that all or a portion of any funds that may be recovered may first become property [of] said bankruptcy estate for distribution to creditors."

14. Debtor testified in his Rule 2004 Examination (docket 285-1 at 62:7-63.5):

> Q.    And you thought it was okay to pursue these claims in Kansas that you owned prior to the time you filed bankruptcy based on your sworn testimony in the Kansas litigation. You thought it was okay to pursue those on your own behalf even though they were not disclosed in connection with your bankruptcy case?
>
> A.    I didn't say anything about them being pursued on my own behalf. **I said all along when I got called, these aren't my interests. These are not McConathy Production Company interests. These are not McConathy Oil & Gas Company interests. I filed bankruptcy. These aren't mine.** And Jeff and these guys [Morris Laing] think that these guys, that your clients, have done something they shouldn't have done. And I said, sure, go ahead. Have at it. I'm not paying them anything. **I mean like I never thought it would be anything other than come back to the Bankruptcy Court. If it makes the Bankruptcy Courts more money, it makes them some more money.** (emphasis added)
>
> Q.    Did you tell your lawyers all that you are telling me now?
>
> A.    Absolutely.

15. As early as May 2019, Carmichael and Schlatter were aware of the necessity to determine whether the mineral rights constituted property of the estate.

16. Carmichael and Schlatter are members of a law firm with offices located within different cities and States. At the time of the events giving rise to this matter, the law firm included lawyers who practiced bankruptcy law, including at least one lawyer who had previously served as a member of the panel of bankruptcy trustees appointed by the United States Trustee for Region 20. At some point, Carmichael and Schlatter consulted with members of their firm, including the former bankruptcy trustee, as to whether the mineral rights were property of the bankruptcy estate.

17. Despite being aware of Debtor's bankruptcy case and the need to review his bankruptcy schedules to ascertain the true ownership of the mineral rights, on August 13, 2019, without examining the schedules, Carmichael and Schlatter filed a lawsuit against AWI on behalf of Debtor and the Partnership in the 25th Judicial District Court in Kearny County, Kansas in the case styled as *Foundation Energy Fund IV-A, LP, et al. v. American Warrior, Inc., et al*, Case No. 19-CV-0011 (the "**Kansas lawsuit**"). Debtor authorized the filing of the petition which did not mention that he had filed bankruptcy or that the mineral rights may be owned by his bankruptcy estate.

18. The Kansas lawsuit was joined by other plaintiffs. Each non-debtor co-plaintiff claims to own undivided working interests in various mineral leases, including the same leases in which Debtor claims to own a fractional interest.

19. The Kansas lawsuit alleges that various mineral leases were the same leases covering the lands at issue in the Partition Lawsuit. Plaintiffs claim that the order of partition does not affect their interests because they were not served with the Partition Lawsuit and had no notice of it.

20. In their state court petition, plaintiffs assert claims for conversion (the oil produced and sold belongs to plaintiffs), unjust enrichment (proceeds for oil produced and sold belong to plaintiffs as do the leasehold rights), trespass (drilling of the wells constitutes a violation of plaintiffs' property rights), ejectment (turning over operation of the wells to someone else) and general title / declaratory judgment (declaring plaintiffs as the owners of the mineral rights). Second Am. Pet. ¶¶ 17, 54-61, 68-91, docket no. 182-4, pp. 41-64.

21. The pleadings filed in the Kansas lawsuit include the original petition, the first amended petition and the second amended petition.

22. The Kansas lawsuit seeks damages from the defendants which, as of October 2020, were estimated to be at least $7 million.

23. The Kansas lawsuit also seeks, *inter alia*, a determination of ownership of the working interests and other interests related to various oil and gas leases.

24. After the lawsuit was filed, third-party defendants were added. At one point, one or more of the third-party defendants claimed to own a net-profits interest by virtue of an unrecorded (and, perhaps, unexecuted) instrument which, if effective, would burden the estate's working interests.

25. At the time Debtors filed their bankruptcy case, the court's electronic filing

system, Case Management/Electronic Case Files (CM/ECF), did not exist. Thus, the bankruptcy schedules are not available for inspection by using the internet based Public Access to Court Electronic Records (PACER). Instead, the records of this case are in the custody of the National Archives and Records Administration (the "**NARA**") at a facility in Fort Worth, Texas.

26. Debtor, Carmichael and Schlatter did not attempt to obtain copies of Debtor's bankruptcy schedules from the NARA prior to filing the original petition, first amended petition or second amended petition. Thus, they did not know whether the mineral rights were listed in Debtor's schedules. Nevertheless, their petitions assert that Debtor has owned the mineral rights continuously since 1987. The petitions assert that Debtor acquired 100% of the interests in the mineral rights upon the dissolution of the Partnership from the other partners when he assumed the debts of the Partnership in exchange for an assignment of their interests to him in the mineral rights.[2]

27. Carmichael and Schlatter did not attempt to obtain copies of Debtor's bankruptcy schedules from the NARA until October 30, 2020, more than a year after the Kansas lawsuit was commenced. Docket no. 281-1, Ex. A., p. 18. They received copies of the schedules in December 2020. Debtors failed to list the mineral rights or the Partnership in their bankruptcy schedules.

28. In late 2019, AWI propounded a discovery request which inquired whether Debtor or the Partnership (or its partners) had ever filed for bankruptcy.

---

[2] In Louisiana, a partnership ceases to exist if it has only one partner. La. Civ. Code art. 2826.

Docket no. 312-2 p.5. Debtor's counsel objected to this request as not being reasonably calculated to the lead to the discovery of admissible evidence.

Docket no. 312-3, p. 1. A dispute arose over the response to this interrogatory.

29. On August 28, 2020, the state court held a hearing regarding the discovery dispute at which time AWI's counsel explained why his client needed to know whether Debtor or the Partnership had filed bankruptcy:

> Now, I'm no bankruptcy expert, but we hired one. And apparently, if the property is unlisted, the trustee can reopen it at any time on things that weren't made part of the schedule. And the ownership interest could go to the creditors; it could go back to the partners; it could go to the individual. And so we don't know who we have to deal with, so we are trying to get the information from them, but they don't want to produce it.

30. During the hearing regarding the discovery dispute, the state court judge inquired about Debtor's bankruptcy case. In response, Carmichael had the following exchange with the state court judge:

> MR. CARMICHAEL: What they are trying to figure out, Judge, is something that they have no interest in.
>
> THE COURT: Well --
>
> MR. CARMICHAEL: They -- they are on the side of they don't -- they don't own this interest. ***We've been in contact with the bankruptcy court also, and the bankruptcy court only has an interest insofar as there are claims that would be equal to or greater than the amount being recovered.*** Until we know what that number is, we are not sure how that is going to work out yet. But that has nothing to do with American Warrior. (emphasis added)
>
> THE COURT: Okay. But if that's the case, then, you know, if you have made contact, then you can let them know that you have made contact with the bankruptcy court.

31. Following the hearing, Debtor supplemented his response to the discovery request, but failed to disclose that he had filed bankruptcy or provide information related to the case. Docket no. 182-5, p. 1-2.

32. On July 14, 2020, Carmichael attempted to schedule a mediation of the case to settle all outstanding controversies, even though he had not yet ascertained whether the mineral rights belonged to Debtor or the estate.

33. At some point, AWI obtained copies of the bankruptcy records from NARA. On January 20, 2021, AWI filed a motion to reopen the bankruptcy case.

34. Thereafter, this court reopened this bankruptcy case on the grounds that Debtors did not disclose the mineral rights or the Partnership.

35. In the order reopening this case, this court stated: "Pursuant to 11 U.S.C. § 362, the automatic stay is hereby in effect and all actions involving property of the bankruptcy estate are hereby stayed."

36. On January 22, 2021, AWI filed a Suggestion of Bankruptcy into the record of the Kansas litigation. The Suggestion of Bankruptcy stated that the parties should immediately halt any proceedings involving property of the bankruptcy estate, further providing that the stay remained in effect.

37. On March 30, 2021, the trustee filed a motion to enforce the stay (docket no. 196) which was resolved by an Agreed Order (docket no. 201) staying the entire state court litigation, pending further order of this court.

38. On May 13, 2021, the non-debtor co-plaintiffs filed a motion to modify the stay to permit them to proceed with the litigation (docket no. 204). That

motion was opposed by the trustee and AWI. Following an evidentiary hearing, this court denied the motion (docket nos. 220 and 224).

39. On October 14, 2021, some of the non-debtor co-plaintiffs filed another motion to modify the stay (docket no. 253), alleging nearly identical grounds that they had alleged in the prior motion to modify the stay. The motion was opposed by the trustee and AWI. An Agreed Order (docket no. 264) was entered which permitted the parties to take a deposition of an elderly witness, but otherwise provided for the stay to remain in place.

40. On December 29, 2021, Carmichael filed in the state court record a "Statement Noting a Party's Death," which stated that one of the non-debtor co-plaintiffs had died, and a "Motion for Substitution of Party" which sought an order substituting a representative in place of the deceased party.

41. On January 7, 2022, AWI filed a motion for contempt (docket no. 273). On March 4, 2022, AWI amended its motion for contempt (docket no. 285).

42. On March 21, 2022, the non-debtor co-plaintiffs [Foundation Energy Fund IV-A, LP, a Delaware Limited Partnership; Foundation Energy Fund IV-B Holding, LLC, a Texas Limited Liability Company; Dolores Jo Matson Trust; Roger Melvin Matson Trust; Willis J. Magathan and the representative for Willis J. Magathan] filed a motion to modify the automatic stay to allow the substitution of a representative for the deceased party and/or to annul the automatic stay with respect to all actions taken by them in the Kansas litigation prior to the reopening of the bankruptcy case (docket no. 291).

43. After the bankruptcy case was reopened for the third time, the trustee settled some of the estate's claims against AWI for $225,000 (docket no. 248). As part of their settlement, the trustee reserved certain claims against AWI. In due course, the trustee filed an adversary complaint in this court (docket no. 310, Case No. 22AP-01006) to assert the claims which had been carved out of the settlement. Those claims are nearly identical to the claims asserted against AWI by Debtor in the Kansas litigation.

44. This court held an evidentiary hearing on the amended motion for contempt (docket no. 285) and the motion to annul the stay (docket no. 291).

## Jurisdiction, Venue and Core Status

This court has jurisdiction pursuant to 28 U.S.C. § 1334(b) and by virtue of the reference by the district court pursuant to 28 U.S.C. § 157(a) and LR 83.4.1. Venue is proper in this district. 28 U.S.C. §§ 1408 and 1409(a). These matters constitute "core" proceedings pursuant to 28 U.S.C. § 157(b)(2)(A), (G), and (O).

## Conclusions of Law and Analysis

When a bankruptcy petition is filed, an automatic stay is imposed that "operates as a self-executing injunction." *Campbell v. Countrywide Home Loans, Inc.*, 545 F.3d 348, 354-55 (5th Cir. 2008). Among other things, the stay prevents entities from taking "any act to obtain possession of property of the estate or of property from the estate or *to exercise control over property of the estate*." See *City of Chicago, Illinois v. Fulton*, ⸺ U.S. ⸺, 141 S. Ct. 585, 589, 208 L.Ed.2d 384 (2021) (quoting 11 U.S.C. § 362(a)(3); emphasis added in decision). When the

property at issue is a cause of action, the phrase "exercise control over" includes adjudication of the claim. As the automatic stay is essentially a court-ordered injunction, any person who violates it may be held in contempt of court.

When the entity harmed by the stay violation is not an individual,[3] the court's ability to award sanctions for stay violation derives from 11 U.S.C. § 105(a), which provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." In this instance, the relevant provision of the Code is 11 U.S.C. § 362(a). The Fifth Circuit has expressly recognized that a court may invoke its § 105(a) civil contempt powers to compensate non-debtors for damages resulting from automatic stay violations. *In re Cleveland Imaging & Surgical Hosp., L.L.C.,* 26 F.4th 285, 294 (5th Cir. 2022) (affirming the imposition of civil sanctions under § 105(a), rather than § 362(k), against insiders of a debtor for violating the automatic stay by filing an adversary to prosecute causes of action which belonged exclusively to the liquidating trustee).

A court may also use its powers under § 105(a) to declare that an act taken in violation of the stay is voidable, meaning it "may be either voided or cured." *Sikes v.*

---

[3] AWI does <u>not</u> seek relief under § 362(k), which provides: "an *individual* injured by any willful violation of [the automatic stay] shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k) (emphasis added). The scope of the term "individual" as used in § 362(k) has been the subject of much disagreement. Courts have differed on whether it applies only to natural persons and whether it extends to creditors as well as debtors and the bankruptcy estate. The Fifth Circuit has applied the term to debtors and creditors, but not trustees. *Matter of Cmty. Home Fin. Servs. Corp.*, 32 F.4th 472 (5th Cir. 2022) ("Though we have previously held that both debtors and creditors have prudential standing to sue under § 362(k), we have expressly declined to consider the question of whether bankruptcy trustees have prudential standing to assert an automatic-stay violation claim."). To sidestep the applicability of § 362(k), AWI seeks declaratory relief and civil contempt sanctions under 11 U.S.C. § 105 based on a violation of the automatic stay.

*Global Marine, Inc.*, 881 F.2d 176, 178 (5th Cir. 1989). A voidable action "is invalid and of no effect unless and until the action is made valid by subsequent judicial action annulling the automatic stay." *In re Dillon*, 619 B.R. 357, 362 (Bankr. S.D. Miss. 7/14/2020). Because a voidable act is invalid, no party may rely on it when it occurred. *In re Pierce*, 272 B.R. 198, 208 (Bankr. S.D. Tex. 11/25/01).

### A. <u>Standing</u>

The starting point for the court's analysis is to determine whether AWI has standing to seek declaratory relief and civil sanctions for stay violations.

"The standing doctrine defines and limits the role of the judiciary and is a threshold inquiry to adjudication." *McClure v. Ashcroft*, 335 F.3d 404, 408 (5th Cir. 2003) (citing *Warth v. Seldin*, 422 U.S. 490, 517-18 (1975)). "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth*, 422 U.S. at 498. "The inquiry has two components: constitutional limits, based on the case-and-controversy clause in Article III of the Constitution; and prudential limits, crafted by the courts." *Id.* (citing *Raines v. Byrd*, 521 U.S. 811, 820 (1997)). Article III standing is jurisdictional, while prudential standing is not.

### 1. <u>Article III Standing</u>

"To meet the [Article III] constitutional standing requirement, a plaintiff must show (1) an injury in fact (2) that is fairly traceable to the actions of the defendant and (3) that likely will be redressed by a favorable decision." *St. Paul Fire & Marine Ins. Co. v. Labuzan*, 579 F.3d 533, 539 (5th Cir. 2009) (citations omitted).

AWI easily established its standing under Article III. First, AWI undoubtedly suffered an injury as it incurred substantial costs in defending the litigation and in filing a motion to reopen the bankruptcy case so that the proper party (the trustee) could administer the claims. Second, the injuries are a direct result of the actions of Debtor and his lawyers in filing the lawsuit in violation of the stay. Third, the injuries could be redressed by any order of this court that ultimately declares the lawsuit void and/or awards damages.

## 2. **Prudential Standing**

Although prudential standing has not been exhaustively defined, the Supreme Court has identified at least three broad principles: " 'the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked.' " *Lexmark International, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126, 134 S.Ct. 1377, 188 L.Ed.2d 392 (2014) (quoting *Elk Grove Unified School Dist. v. Newdow,* 542 U.S. 1, 12, 124 S.Ct. 2301, 159 L.Ed.2d 98 (2004)). In *Lexmark*, however, the Supreme Court stated that the "zone of interests" test no longer falls under the "prudential" rubric, abrogating *Elk Grove Unified School Dist.* on this point. The zone of interest analysis asks whether "this particular class of persons ha[s] a right to sue under this substantive statute." *Lexmark* at 127, 134 S.Ct. 1377 (quotations and citations omitted).

After *Lexmark,* only two broad principles remain to determine prudential standing: 1) whether the complaint raises a generalized grievance more properly addressed by the legislature, and 2) whether the plaintiff is asserting his own legal rights and interests rather than the rights and interests of third parties.

All parties agree that AWI is asserting its own rights as opposed to the rights of other parties or entities and that this case is appropriate for judicial resolution. Accordingly, AWI has satisfied the prudential standing test.

## B. <u>Debtor and His Counsel Violated the Automatic Stay</u>

This court has previously ruled that the automatic stay applies to the mineral rights notwithstanding the closure of the bankruptcy case because they were never listed in Debtor's bankruptcy schedules, and the trustee did not administer them. *In re McConathy*, No. 90-13449, 2021 WL 2405734, at *3 (Bankr. W.D. La. June 14, 2021) citing *Kane v. Nat'l Union Fire Ins. Co.*, 535 F.3d 380, 385 (5th Cir. 2008) ("[i]n a Chapter 7 case, at the close of the bankruptcy case, property of the estate that is not abandoned under § 554 and that is not administered in the bankruptcy proceedings—including property that was never scheduled—remains the property of the estate."). Pursuant to 11 U.S.C. § 362(c)(1), the automatic stay continues "until such property is no longer property of the estate."

In a chapter 7 case, the trustee is the estate's representative, 11 U.S.C. § 323(a), and is the sole person with authority to adjudicate the estate's causes of action. *See*, *Kane,* 535 F.3d at 385 ("Thus, a trustee, as the representative of the bankruptcy estate, is the real party in interest, and is the only party with standing

to prosecute causes of action belonging to the estate once the bankruptcy petition has been filed."). When someone other than the estate's sole representative files a suit to adjudicate the rights of parties with respect to an asset of the estate, such action violates the automatic stay provisions of 11 U.S.C. § 362(a)(3). *In re Tamarack Development Associates, LLC*, 611 B.R. 286 (Bankr. W.D. Mich. 2020) (filing and pursuit of causes of action belonging to the estate by an entity other than the trustee has the potential to adversely affect the estate and constitutes an improper exercise of control over property of the estate in violation of section 362(a)(3)); *In re Garak*, 569 B.R. 684 (Bankr. E.D. Mich. 2017) (chapter 7 debtors' continuing prosecution of counterclaims that they asserted against credit union, which were property of the bankruptcy estate, violates section 362(a)(3)).

When Debtor and his counsel filed a lawsuit asserting claims arising from the undisclosed mineral rights, they violated the stay. Except as noted below, all actions taken by Debtor and his counsel to prosecute these claims violated the stay.

Debtor's counsel did <u>not</u> violate the stay by: 1) filing the lawsuit on behalf of the non-debtor co-plaintiffs, 2) prosecuting the claims held by the non-debtor co-plaintiffs, 3) attending a status conference held by the state court wherein they told the judge that the bankruptcy court had entered an order imposing a stay of the litigation, and 4) filing a "suggestion of death" in the record of the state court lawsuit after one of the non-debtor co-plaintiffs died. To the extent that any of these actions constituted an infraction of the stay (which the court seriously doubts), they constituted harmless error. Sanctions are not appropriate for these actions.

**C. __AWI's Grievance Arguably Falls Within the Zone of Interests Protected by the Statute__**

Having decided that the stay was violated, the next issue is whether AWI is the proper party to complain about it. Debtor and his counsel argue that the only parties entitled to complain about stay violations are debtors, creditors and trustees. They argue that AWI does not fall within the statute's "zone of interest" because it is not a debtor, creditor or trustee.

AWI counters that the automatic stay protects any party that was harmed by its violation, particularly parties such as itself which incurred significant costs in defending a lawsuit that violated the stay. AWI also argues that in the event it does not fall within the zone of interests protected by the statute, the court is nevertheless statutorily authorized to fashion a remedy for such violations by virtue of its powers under 11 U.S.C. § 105(a).

Even though *Lexmark* stated that the "zone of interests" test should no longer be used to determine if a party has prudential standing, the test remains relevant to determine "whether a legislatively conferred cause of action encompasses a particular plaintiff's claim." *Lexmark* at 127. Unlike standing issues, which affect the court's jurisdiction, *Lexmark* explained that "the absence of a cause of action is a *merits* issue that does not implicate the court's constitutional power to decide the case." *Keen v. Helson*, 930 F.3d 799, 802 (6th Cir. 2019) (citing *Lexmark*, 572 U.S. at 128 n.4, 134 S.Ct. 1377) (emphasis in original).

A plaintiff can satisfy the zone of interest test by alleging that it suffered financial injury resulting from statutory violations which are, at the least,

"*arguably* within the zone of interests" protected by the statute violated. *Bank of Am. Corp. v. City of Miami, Fla.*, 137 S.Ct. 1296, 1303, 197 L. Ed. 2d 678 (2017) (emphasis in original). The Supreme Court "conspicuously included the word 'arguably' in the test to indicate that the benefit of any doubt goes to the plaintiff." *Lexmark*, 572 U.S. at 130 (quoting *Match–E–Be–Nash–She–Wish Band of Pottawatomi Indians v. Patchak,* 567 U.S. 209, 225, 132 S.Ct. 2199, 2210 (2012)).

In applying the zone of interest test, the court must examine the statutes to determine if they authorize a party to seek relief. There are two statutes at issue. The first, 11 U.S.C. § 362(a)(3), states that the filing of a bankruptcy petition operates as a stay against "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." The second, 11 U.S.C. § 105(a), states that a bankruptcy court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." Unfortunately, neither statute specifies who is entitled to seek relief.

As the Fifth Circuit has noted, the zone of interest test " 'forecloses suit only when a plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that' Congress authorized that plaintiff to sue." *Collins v. Mnuchin*, 938 F.3d 553, 574 (5th Cir. 2019), *aff'd in part, vacated in part, rev'd in part sub nom. Collins v. Yellen*, —— U.S. ——, 141 S.Ct. 1761, 210 L.Ed.2d 432 (2021) (quoting *Lexmark*, 572 U.S. at 130, 134 S.Ct. at 1389). Far from asserting interests which are "marginally related" to the statutes at issue, AWI asserted that it suffered direct

and particularized injuries resulting from a violation of the stay. These injuries included: 1) the financial costs to defend Debtor's claims asserted in the Kansas lawsuit, 2) the financial costs to reopen this bankruptcy case so that a trustee could be appointed to decide whether he should administer the causes of action in question, and 3) the exposure to duplicate liability for being a defendant in the Kanas litigation filed by Debtor and the trustee's litigation filed in this court which assert the same claims against AWI.

As mentioned earlier, in the Fifth Circuit, an action taken in violation of the automatic stay is voidable. The bankruptcy court is the only court which has the authority to declare that actions taken in violation of the stay are voidable and must be set aside. Additionally, if this court is not permitted to set aside Debtor's claims in the Kansas lawsuit, AWI will continue to be exposed to double liability because it is a defendant in Debtor's lawsuit and a defendant in the trustee's adversary proceeding, each seeking relief on identical claims. The competing lawsuits raise the specter of AWI having to pay twice for the same claims. It seems only fair that AWI should be able to ask this court to declare that the Kansas lawsuit is invalid as it was filed in violation of the stay.

Two undesirable outcomes would result if this court were to conclude that AWI's claims are "marginally related" to the statutes at issue or that the relief sought – a declaratory judgment stating the Kansas lawsuit is invalid and the award of civil contempt sanctions – is "inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress authorized that

plaintiff to sue," *Collins v. Mnuchin*, 938 F.3d at 574. First, it would suggest that, where, as in this case, a debtor unlawfully controls property of the estate, he may do so with impunity when the one party that has an incentive to complain of the violation is without the ability to call the violation to the court's attention. Second, it would suggest that even though a violation of the automatic stay has occurred, and even though the actions taken in the violation stay are voidable, the sole party who is adversely affected by that action is without the ability to seek redress in the only court that has the authority to enforce the statute that created the stay.

The automatic stay is designed to protect the preservation of estate property. Debtor and his counsel violated the stay when they sued AWI over claims that belong exclusively to the estate. When the stay was violated, it resulted in a particularized harm to AWI by forcing it to defend an invalid lawsuit. Accordingly, AWI satisfied the zone of interest test by establishing that it suffered financial injury resulting from statutory violations which are, at the least, "*arguably* within the zone of interests" protected by the statute violated. *Bank of Am. Corp.*, 137 S. Ct. 1296, 1303.

### D. <u>This Court has the Authority to Fashion a Remedy for the Violation of the Automatic Stay</u>

Regardless of whether AWI's interests fall within the zone of interest protected by the statutes at issue, this court is empowered to fashion an appropriate remedy for an injury caused by a violation of the stay. 11 U.S.C. § 105(a) permits a bankruptcy court, sua sponte, to take "any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent

an abuse of process." In addition, a bankruptcy court has the inherent power to enforce its own orders and to craft an appropriate remedy when its orders have been violated, including the automatic stay. *Law v. Siegel*, 571 U.S. 415, 420-21 (2014) (a bankruptcy court has statutory authority under § 105(a) to issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of the Code, **and** it possesses inherent power to sanction abusive litigation practices).

The court will exercise its civil contempt authority under § 105(a) and its inherent sanction authority. These powers are not interchangeable. As one court noted:

> Civil contempt authority allows a court to remedy a violation of a specific order (*including 'automatic' orders, such as the automatic stay or discharge injunction*). The inherent sanction authority allows a bankruptcy court to deter and provide compensation for a broad range of improper litigation tactics.

*In re BCB Contracting Servs., LLC*, No. 2:19-BK-15555-DPC, 2022 WL 1198232, at *5 (B.A.P. 9th Cir. Apr. 21, 2022) (emphasis added), quoting *Knupfer v. Lindblade (In re Dyer)*, 322 F.3d 1178, 1196 (9th Cir. 2003) (citations omitted).

### E. **Civil Contempt Authority**

"A party may be held in contempt if he violates a definite and specific court order requiring him to perform or refrain from performing a particular act or acts with knowledge of that order." *Whitfield v. Pennington*, 832 F.2d 909, 913 (5th Cir. 1987) (citing *SEC v. First Fin. Grp. of Texas, Inc.*, 659 F.2d 660, 669 (5th Cir. 1981)). "The automatic stay is a self-executing injunction and constitutes a court order for contempt purposes." *In re Noram Res., Inc.*, No. 08-38222, 2015 WL

5965654, at *5 (Bankr. S.D. Tex. Oct. 9, 2015). In a civil contempt proceeding, the movant "bears the burden of establishing by clear and convincing evidence 1) that a court order was in effect, 2) that the order required certain conduct by the respondent, and 3) that the respondent failed to comply with the court's order." *Whitcraft v. Brown*, 570 F.3d 268, 271–72 (5th Cir. 2009) (quoting *Martin v. Trinity Indus., Inc.*, 959 F.2d 45, 47 (5th Cir. 1992)).

The Supreme Court has clarified that "civil contempt should not be resorted to where there is a fair ground of doubt as to the wrongfulness of the defendant's conduct." *Taggart v. Lorenzen*, 139 S.Ct. 1795, 1801 (2019) (internal quotation and citation omitted). "This standard is generally an objective one. We have explained before that a party's subjective belief that she was complying with an order ordinarily will not insulate her from civil contempt if that belief was objectively unreasonable." *Id.* at 1802.

Applying the facts of this case to the foregoing standards, the clear and convincing evidence shows that: 1) a court order [the automatic stay] was in effect at the time Debtor and his counsel unlawfully prosecuted the estate's causes of action, 2) the automatic stay was a definite and specific order of the court requiring Debtor and his counsel to refrain from taking such action, and 3) Debtor and his counsel failed to comply with the automatic stay.

Debtor and his counsel do not challenge these facts. Instead, they focus on the *Taggart* standard and argue that there was a "fair ground of doubt" about whether they should have known that the stay applied. They argue that no

reasonable person would have thought the automatic stay would have remained in place for a bankruptcy case that was closed decades ago and, therefore, there was a "fair ground of doubt" as to the wrongfulness of their conduct. That argument, however, ignores critical evidence in this case.

The clear and convincing evidence proves that: 1) Debtor's counsel knew about the bankruptcy case, 2) Debtor agreed to pay his counsel a higher percentage fee due to the extra work required to deal with the bankruptcy "wrinkle," 3) Debtor's counsel knew that Debtor owned the mineral rights prior to his bankruptcy case, 4) Debtor's counsel knew that they needed to examine the bankruptcy schedules to determine if the mineral rights were listed, 5) Debtor's counsel knew that they needed to obtain the consent of the trustee to prosecute any claim on behalf of the estate, 6) Debtor's counsel did not make any effort to review the bankruptcy schedules until 16 months after the lawsuit was filed, 7) Debtor's counsel initially concealed information about the bankruptcy case from AWI during pretrial discovery, 8) Debtor's counsel inaccurately suggested to the state court judge that he had contacted the bankruptcy court and that the court had informed him that it was not interested in the outcome of the litigation other than collecting an amount necessary to satisfy creditors, and 9) Debtor's counsel tried to arrange for a mediation without disclosing the claims to the trustee.

After considering these facts, this court concludes that there was no "fair ground of doubt" that the stay applied or that the actions of Debtor and his counsel violated the stay. No reasonable person would have concluded otherwise. When

Debtor and his counsel filed the lawsuit without first attempting to review the bankruptcy schedules, they fell on the wrong side of the automatic stay.

Once the moving party satisfies its burden to show that the respondent did not comply with the order, then the burden shifts to the respondent to rebut this showing, demonstrate an inability to comply, or present other relevant defenses. *F.D.I.C. v. LeGrand*, 43 F.3d 163, 170 (5th Cir. 1995). In this case, Debtor and his counsel offer different defenses. Debtor argues that he was acting in good faith and at all times relied upon the advice of his counsel. Debtor's counsel assert that they too acted in good faith and in the best interests of their client and the estate by filing the lawsuit to prevent the claims from becoming time-barred under state law. From their viewpoint, there was no harm in filing the lawsuit to preserve the claims as they believed they had a right to substitute the trustee as the real party in interest if it was later determined that the bankruptcy estate owned the claims.

There are several problems with these defenses. First, "willfulness is not an element of civil contempt." *Petroleos Mexicanos v. Crawford Enterprises, Inc.*, 826 F.2d 392, 401 (5th Cir. 1987). That means "[g]ood faith is not a defense to civil contempt." *Chao v. Transocean Offshore, Inc.*, 276 F.3d 725, 728 (5th Cir. 2002).

Second, reliance on the advice of counsel is not a defense to civil contempt. *Beckhart v. NewRez LLC*, 31 F.4th 274, 278 (4th Cir. 2022) ("advice of counsel *is not a defense* to civil contempt.") (emphasis in original) (citations and quotation marks omitted).

Third, the evidence shows a lack of good faith on the part of Debtor's counsel

as they made no effort to obtain copies of the bankruptcy records to determine if the automatic stay applied before they filed the lawsuit and for 16 months thereafter. Debtor testified that he bluntly told his lawyers before they filed the lawsuit that "these aren't my interests." Thus, at the time they filed the lawsuit, counsel had reason to believe that the bankruptcy estate owned the mineral rights and the causes of action related to those rights. Yet they failed to take reasonable steps to determine if the mineral rights had been listed in the bankruptcy schedules, thereby triggering the applicability of the stay. "Once a party learns of the bankruptcy filing, he or she is under a duty to seek further information which should reveal the applicability and scope of the automatic stay." *In re Coats*, 168 B.R. 159, 166 (Bankr. S.D. Tex. 1993).

The court notes that Debtor's counsel also represented parties in the litigation who claimed to hold an unrecorded "net profits interest" which, if enforceable, would have burdened the interests held by Debtor or the estate. This fact is important because had Debtor's counsel determined that the trustee was the real party in interest who should have been substituted as a plaintiff in the litigation, they could not have represented the trustee in that action. A trustee is not permitted to employ an attorney who represents "any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed." 11 U.S.C. § 327(e). Despite this conflict (which could not have been waived by the trustee), Debtor's counsel tried to schedule a mediation to settle all claims asserted in the lawsuit. Such actions violated the automatic stay.

## F. __Inherent Sanction Authority__

When a bankruptcy court sanctions a party using its inherent authority, the Fifth Circuit will "uphold those sanctions only if (1) the bankruptcy court finds that the party acted in bad faith or willfully abused the judicial process and (2) its finding is supported by clear and convincing evidence." *In re Cleveland Imaging & Surgical Hosp., L.L.C.*, 26 F.4th 285, 292 (5th Cir. 2022), citing *Cadle Co. v. Moore* (*In re Moore*), 739 F.3d 724, 729–30 (5th Cir. 2014).

Movants failed to show that Debtor acted in bad faith. With respect to Debtor's counsel, however, movants proved, by clear and convincing evidence, that they acted in bad faith and willfully abused the judicial process. The evidence supporting the finding of civil contempt also supports a finding of bad faith.

## G. __Sanctions__

Having determined that this court should exercise its contempt authority, the court must determine an appropriate sanction. Civil contempt may only be employed in two situations: to coerce the defendant into compliance with a court order and/or to compensate the complainant for losses sustained. *Am. Airlines Inc. v. Allied Pilots Ass'n,* 228 F.3d 574, 585 (5th Cir.2000) (citing *United States v. United Mine Workers of Am.,* 330 U.S. 285, 303–04 (1947)). Here, compliance is not an option. Thus, the only remedy is to award compensation to AWI for its losses.

With respect to the imposition of monetary sanctions, the court will not treat Debtor and his counsel the same. The evidence shows that Debtor's counsel engaged in most of the misconduct in this case. By contrast, Debtor told his lawyers up front

that "these aren't my interests." He thought that litigation recoveries would benefit his creditors. He relied upon the advice of counsel before he engaged in any action which violated the stay. While reliance on the advice of counsel is not a defense to contempt, the Fifth Circuit has held that it is relevant for the determination of an appropriate sanction. *Sec. & Exch. Comm'n v. First Fin. Grp. of Texas, Inc.*, 659 F.2d 660, 670 (5th Cir. 1981) ("Reliance upon advice of counsel may be considered in mitigation of the sanction but does not constitute a defense to contempt of court."); *See also Taggart*, 139 S. Ct. at 1802 (noting in dicta that "a party's good faith, even where it does not bar civil contempt, may help to determine the appropriate sanction."); *S.E.C. v. Musella*, 818 F. Supp. 600, 606 (S.D.N.Y. 1993) (collecting cases and holding that "advice of counsel and good faith do not relieve from liability for a civil contempt, although they may affect the extent of the penalty").

This court will not impose any monetary sanctions on Debtor for his violations of the stay. Instead, all monetary sanctions will be imposed on his counsel for their violations of the stay. From the beginning of their representation of Debtor, his lawyers were aware of the necessity to obtain the consent of the trustee to pursue causes of action arising from the mineral rights. In fact, their contingency fee agreement contained an express provision to "authorize Attorneys to obtain the consent and authorization of the bankruptcy trustee, Case No. 90-13449, Western District of Louisiana, to pursue said claims on behalf of Pat McConathy." Yet they did not even try to obtain the records of the bankruptcy case until sixteen months after they filed the lawsuit. In the meantime, they tried to obfuscate AWI's efforts to

obtain information about the bankruptcy case. Such misconduct is outrageous. Monetary sanctions against counsel are appropriate.

The court will determine the sanction amount after submission of a fee application by AWI showing fees charged for services rendered resulting from the misconduct. The fee application will be subject to the notice requirements of Fed. R. Bankr. P. 2002(a)(6) and 2002(c)(2) and all interested parties will be afforded an opportunity to object to the proposed compensation and reimbursement of expenses.

With respect to the request for fees, AWI may recover "only the portion of [its] fees that [it] would not have paid but for" the misconduct. *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1187, 197 L. Ed. 2d 585 (2017) quoting *Fox v. Vice,* 563 U.S. 826, 836, 131 S.Ct. 2205, 180 L.Ed.2d 45 (2011). "The court's fundamental job is to determine whether a given legal fee—say, for taking a deposition or drafting a motion—would or would not have been incurred in the absence of the sanctioned conduct. The award is then the sum total of the fees that, except for the misbehavior, would not have accrued." *Haeger*, 137 S. Ct. at 1187.

## H. AWI did not Adequately Allege a Violation of the Stay by the Non-Debtor Co-Plaintiffs

In contested matters, such as the one currently before the court, relief is sought by motion. Fed. R. Bankr. P. Rule 9014(a). Bankruptcy Rule 9013 requires this motion to state both the relief sought and the grounds therefor "with particularity." Fed. R. Bankr. P. Rule 9013. *See also IRS v. Taylor*, 132 F.3d 256, 262 (5th Cir. 1998) (reiterating this requirement). Conclusory allegations do not suffice; instead, the underlying facts that justify the conclusion must be

pleaded. *See, Ashcroft v. Iqbal,* 556 U.S. 662 (2009); *Bell Atlantic Corp.*

*v. Twombly,* 550 U.S. 544 (2007).

In this case, AWI argues that all claims asserted in the Kansas lawsuit are invalid, including the claims asserted by the non-debtor co-plaintiffs, because they too violated the stay. The motion, however, is entirely silent with respect to any misconduct by the non-debtor co-plaintiffs. The court is not obligated to speculate the reasons that might support the motion. Bankruptcy Rule 9013 places the burden of advancing support for a motion upon the movant, not the court. The failure to plead with particularity is fatal AWI's claims.

At the hearing, AWI argued that Debtor's counsel's knowledge of the bankruptcy case and their misconduct should be imputed to the non-debtor co-plaintiffs. AWI, however, did not make that argument in its motion. AWI's claim for declaratory relief against the non-debtor co-plaintiffs should be denied.

## I. **<u>The Automatic Stay Should Not Be Annulled</u>**

11 U.S.C. § 362(d)(1) requires courts to retroactively annul the automatic stay where there exists "cause" to do so. The statute provides:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
>
> > (1) for cause, including the lack of adequate protection of an interest in property of such party in interest.

11 U.S.C. § 362(d)(1).

For the moving parties to obtain relief, they must meet the statutory

standard of "for cause." The Fifth Circuit has noted that the Bankruptcy Code does not precisely define what "for cause" means and that this lack of clarity provides "flexibility to the bankruptcy courts." *See In re Mirant Corp.*, 440 F.3d 238, 254 (5th Cir. 2006). As such, whether "cause" exists is a fact-intensive inquiry that must be determined on a case-by-case basis. *In re Reitnauer*, 152 F.3d 341, 343 n.4 (5th Cir. 1998) ("Because § 362 does not offer guidance as to what constitutes 'cause,' reviewing courts must determine whether cause existed on a case-by-case basis.").

In this case, the non-debtor co-plaintiffs seek the entry of an order retroactively annulling the automatic stay. By annulling the stay, the court can retroactively validate actions taken in violation of the stay. *Sikes v. Global Marine, Inc.*, 881 F.2d 176, 178 (5th Cir. 1989) ("The power to annul authorizes the court to validate actions taken subsequent to the impressing of the section 362(a) stay.").

The non-debtor co-plaintiffs filed their motion to annul the stay in response to AWI's motion which seeks to invalidate the entire Kansas lawsuit. Considering this court's ruling that AWI failed to adequately plead a violation of the stay by the non-debtor co-plaintiffs, the moving parties may no longer care whether the stay is annulled. Nevertheless, because an actual controversy exists about their entitlement to an annulment of the stay, the court must analyze the motion.

Annulment of the stay should only be granted in exceptional circumstances. *In re Thornburg*, 277 B.R. 719, 731 (Bankr. E.D. Tex. 2002). Courts have "broad discretion" to grant an annulment of an automatic stay. *Pentecost v. Louisiana Safety Ass'n of Timbermen*, 626 B.R. 879, 886 (W.D. La. 2021). "The party moving

for the retroactive lifting of the stay has the burden to make a prima facie showing of cause for relief." *In re WorldCom, Inc.*, 325 B.R. 511, 521 (Bankr. S.D.N.Y. 2005).

In this case, the motion to annul the stay should be denied for two reasons. First, the moving parties failed to satisfy the "for cause" standard. Second, the motion represents their third attempt to seek relief under 11 U.S.C. § 362(d)(1). This court previously denied their other two attempts (docket nos. 221, 264). The court's prior orders are now final and non-appealable. *Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 140 S. Ct. 582, 592, 205 L. Ed. 2d 419 (2020). The moving parties should not be given a third bite at the apple. The automatic stay remains in place.

## Conclusion

The decision to impose monetary sanctions against Debtor's counsel is not a close call. When they filed the lawsuit asserting the estate's causes of action, the automatic stay was in effect. They knew about the bankruptcy case. They had the duty to not violate the stay and had several means by which to ensure they did not do so.

Before they filed the lawsuit, Debtor's counsel could have reviewed the bankruptcy schedules to determine if the mineral rights were listed. They could have filed a motion to reopen the bankruptcy case and sought a comfort order from this court determining whether the stay applied. *See* 11 U.S.C. § 362(j) ("On request of a party in interest, the court shall issue an order under subsection (c) confirming

that the automatic stay has been terminated.").[4] They could have filed a motion for abandonment of the causes of action. 11 U.S.C. § 554(b). They could have requested relief from the automatic stay. 11 U.S.C. § 362(d). They could have sought derivative standing to purse the claims on the estate's behalf. *In re Sylvester*, No. CV 19-11716, 2020 WL 1140890, at *3 n. 13 (E.D. La. Mar. 9, 2020) ("While avoidance actions belong to the estate, and the trustee has exclusive standing to assert such claims, courts have recognized that in situations where the trustee has declined to pursue the claim, the bankruptcy court authorizes a creditor to bring the claim, and the trustee consents – all of which occurred in this case – the creditor has derivative standing to pursue the avoidance action.").

Debtor's counsel chose not to take any of these steps and now find themselves in contempt. They have no one to blame but themselves.

The court hereby: 1) declares that the claims asserted by Debtor in the Kansas lawsuit are voidable and are therefore invalid and without effect, 2) grants, in part, the motion for contempt, and 3) denies the motion to annul the stay. Monetary sanctions against Debtor's counsel will be awarded after the court determines the reasonableness of attorneys' fees incurred by AWI.

The court will enter a separate order in accordance with this ruling.

###

---

[4] Section 362(c) addresses the duration of the automatic stay. It provides that the stay of an act against property of the estate "continues until it is no longer property of the bankruptcy estate[.]" 11 U.S.C. § 362(c)(1). In this case, the mineral rights were property of the estate because they were not listed in Debtor's bankruptcy schedules and the trustee did not administer them prior to the closure of the bankruptcy case. 11 U.S.C. § 554(d). Thus, under 11 U.S.C. § 362(c)(1), the automatic stay remained in place.